GINN & CO. v. APOLLO PUB. CO.

(District Court, E. D. Pennsylvania. December 9, 1915.)

No. 1069.

COPYRIGHTS ☞87—SUIT FOR INFRINGEMENT—PROFITS RECOVERABLE.
    Report of special master as to profits recoverable for infringement of copyrights reviewed.
    · [Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81; Dec. Dig. ☞87.]

In Equity. Suit by Ginn & Co. against the Apollo Publishing Company. On exceptions to report of special master. Modified and confirmed.

See, also, 215 Fed. 772.

W. Kerper Stevens, of Reading, Pa., for plaintiff.

H. F. Kantner, of Reading, Pa., and Alex. Simpson, Jr., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. Plaintiff and defendant each complain of the report of the master. Whatever real substantial injury either of these parties would suffer from a decree following the findings of the master flows from the acts either of omission or commission of

the complaining party. If substantial justice has not been done by the report, it is the fault of the parties themselves. Any decree based upon the report would nevertheless be a default decree. Recognizing this, the master has coupled the statement of the conclusions reached with an expression of regret that the case as presented to him compelled these conclusions. There is, however, a different situation now presented, which enables us to do that which the master regretfully found he could not do. This difference springs out of the fact that we are asked to extend a helping hand, and in consequence have it in our power to extend it only on terms. This, of course, the master could not do. He has, however, so fully and clearly returned the facts that the case can be disposed of without a re-reference.

The trial of this case resulted in the usual findings establishing the rights of the plaintiff, the infringement of those rights by the defendant, the extension of the remedy of injunction and the awarding of damages and profits or a penalty, as the case might be. In copyright as in patent cases, the purpose is to find the amount of damages or of profits. The difference in the two classes of cases is a practical one. In patent cases, the profits are found by contrasting the amount of proceeds of sales made with the total cost of production. In copyright cases, under the act of 1912 (Act Aug. 24, 1912, c. 356, § 25(b), 37 Stat. 489 [Comp. St. 1913, § 9546]), the plaintiff may show only the receipts, or debit side of the account, and put upon the defendant the burden of proving the cost of production, or the plaintiff may exact the penalty. A successful plaintiff is thus given something in the nature of certain options. He may take damages and profits or the penalty imposed. If he takes profits, he may avail himself of the method of proving profits given by the act of 1912. This method, however, is not exclusive. Whatever method he adopts, he may apply it by calling upon the defendant to account, or by proving either sales or profits through and by evidence introduced or witnesses called by him. He may require the production of books and papers, and in proper cases offer them as part of his evidence in proof of either sales or profits. He may compel such production either by notice, or through an order to produce, or by a subpœna duces tecum. Certain legal consequences follow the method adopted, which differ if some one other than a party is subpœnaed.

The decree in this case was a consent decree, in the sense that it was prepared and submitted by counsel. It awards damages and profits, the ascertainment of the amount of which to be by the special master. The plaintiff began before the master in the regular way of securing the allowance of an order on the defendant to file an account in accordance with the established practice under the equity rules. After this, however, the proceedings were diverted by the plaintiff to an inquiry into the financial condition of the defendant, its original organization, the issue of its stock and obligations entered into by it, and what had become of its assets. Witnesses were subpœnaed, and required to produce and to testify as to books and papers. Some of the witnesses were officers and some employés of the defendant, and some were persons into whose control its books of account had

passed. Out of eight meetings before the master six were devoted to the extraneous inquiries mentioned, and only two (and one of these only formally) were devoted to aiding the master in the work he had on hand. A feature of these first six meetings was that at none of them was there any appearance on behalf of the defendant. Counsel (other than counsel for plaintiff) who appeared limited their appearance for the "witnesses." It was not until the present counsel for defend-ant was connected with the case that any counsel appeared for the defendant and any attempt was made to proceed with the work before the master. One meeting then sufficed to complete it.

What had previously been done can be soon recounted. Plaintiff began with asking for a formal order on the defendant for an accounting in accordance with the equity rules. This was limited (as plaintiff had the right to limit it) to an account of sales. The master promptly issued the order. Plaintiff made no formal proof of how or when it was served. A number of witnesses, some of whom were or had been executive officers of defendant, were subpœnaed and testified. The inquiry was then diverted, as already stated, to other matters. In the midst of this, however, an account was stated and produced. This seems to have been in part the joint production of the former manager and former bookkeeper of defendant, and in part was made up from the report of an examination of the books of the defendant which had previously been made. Just what it was does not perhaps clearly appear, but plaintiff went over it and had a statement prepared from it by other accountants. The plaintiff offered the statement of its accountants, and the defendant recalled its manager, who testified to facts upon which was based, at least in part, an account which he had prepared which showed the profits received from sales after the cost was deducted.

From all which took place there is to be gathered these facts: The defendant admits $1,141.34 of profits to have been received in all. The plaintiff disputes the correctness of the witnesses' statement of the cost of production.

We must now recur to the early stages of the proceedings. Plaintiff by the bill of complaint specifically averred the copyright of books known as Frye's Geographies, Smith's Arithmetics, and Cyr Readers, and the infringement by defendant. There was, in addition, a general averment that the specific instances given were typical of infringement of plaintiff's copyrights in many other instances. At the trial there was no controversy over plaintiff's copyrights, but no formal proof was made of any copyrights except those specifically averred. During the proceedings before the master it appeared from the admissions made in the accounting that a number of other copyrighted books of plaintiff were in fact to be added to the list of those proof of the copyright and infringement of which had been offered at the trial. It is also clear that at least some of the "elements of cost" in defendant's accounting of profits are based upon the statement of others than the witness who was called to vouch the account.

The bill of complaint laid at the door of the defendant the charge of three wrongs. One was unfair trade competition; another, in-

fringement of copyright, in that defendant had rebound the copyrighted books of plaintiff; the third, that they had further infringed by reprinting and republishing parts of plaintiff's copyrighted books. The bill was sustained only as to the third complaint. The inquiry before the master disclosed the fact that the business transactions of defendant had been so recorded that it is now impossible to distinguish between the publications of plaintiff which were rebound and those which were reprinted and republished, as well as rebound. Counsel for defendant has therefore accepted the necessity of including them all. It is manifest that any statement of the actual profits received by defendant from that part of its business which has been found to have been an infringement of plaintiff's copyright must be based upon a more or less intelligent guess or upon an arbitrary assumption of no cost, or upon more or less arbitrary legal presumption.

Both parties have filed exceptions to the report of the master. The plaintiff has further made application to have the decree opened, the bill amended, and proofs of the omitted copyrights heard. The case has been long pending and should be disposed of. Neither party is entitled to any further indulgence than is required to reach as nearly a correct calculation of the profits as can now be made. Any amount which would ultimately be awarded would scarce repay the expense of a satisfactory examination, and in all probability would be the amount which we think should now be found.

The conclusion reached is that the amount of the profits be fixed at the sum of $1,141.34 on the basis of the inclusion of the omitted copyrights, and to carry this into effect the leave asked for by plaintiff is granted, and the exceptions of defendant to the report of the master are sustained, to the extent that the finding that plaintiff is entitled to recover from defendant as profits the sum named in the master's report is modified and changed to the sum of $1,141.34, and the defendant's exceptions are (except to this extent), as well as the exceptions of plaintiff, dismissed, and the report of the master, as thus modified, is confirmed.